25-2079 The tax court made two critical legal errors. First, it erred on jurisdiction, and that's as far as this Court needs to go. Second, the tax court erred on the merits as the Fifth Circuit recently held. To start with jurisdiction, which the Fifth Circuit didn't address, the IRS could adjust limited partners' self-employment tax liability in TEFRA partnership-level proceedings only if that issue counts as a partnership item. It doesn't. But if we were to allow the tax court to – if this were done on the partner-by-partner level, couldn't that lead to inconsistent results? And wasn't the whole point of this statutory system to avoid that problem? No, Your Honor. The point of the statutory system was to ensure that things that are appropriately resolved at the partnership level, because they are partnership items, are resolved in that way. To avoid inconsistency. I'm sorry? To promote efficiency and avoid inconsistency, as Ms. Merriam was suggesting, right? Correct. But only as to – Would it be necessary to do this at the partnership level? It wouldn't, because the things that are dealt with at the partnership level are things that are – So the partnership has to file a 1065. The partnership is required to report net earnings from self-employment on the 1065. I don't know what I'm missing here. Why isn't that a partnership item? Because it's on the partnership return. Looking at the statutory text, something is a partnership item if it is, quote, required to be taken into account for the partnership's taxable year under any provision of Subtitle A. So it has to be required – And AESC is in the return. It is – it is in there pursuant to Section 6031, or something that – And if it's in there correctly – incorrectly, then it would have to be corrected at the partnership level. Isn't that so? No, Your Honor. So first of all, net earnings from self-employment is an individualized determination. If you look at the statutory text, it talks all about the individual's tax year and their – Am I wrong that the law has been changed and so that this issue, however determinative it might be in this case, is not really a legal issue of much significance in the future because of a law now, TEFRA has been changed, and so it isn't there. Am I right about that? You're right, Judge Calabresi, that TEFRA is no longer in force. It's still an issue of significance for this case because it goes to the tax court's jurisdiction. Well, obviously – obviously, if there was no jurisdiction, there was no jurisdiction. But I'm just putting it a bit in context as to what is the really important long-term issue, which is, is this personal income or is this income which derives from their – not as individual people. So maybe, you know, we hear your argument on that and we have it in the briefs and we have all the arguments, but I really hope we'll spend some time on the key tax issue. I'm happy to get to the merits. If I could just for a moment finish up on jurisdiction to respond to Judge Chin's question. The statutory text requires that an item be taken into account for the partnership's taxable year, not an individual item like net earnings. That only goes to the individual, but for the partnership's taxable year and that requirement has to come from Subtitle A. Nothing in Subtitle A requires a partnership to report an individual's net earnings from self-employment. Nothing in Subtitle A requires that. And that is also not something that is taken into account for the partnership's taxable year. It's not a partner-level question. You should probably move on, Judge Calabresi. So to move on to the merits, as the Fifth Circuit has held, just reading the statute, the tax code makes a limited partner's distributive share of the partner's income exempt from Social Security and Medicare taxes where that is. Here is my problem, apart from the fact that it's the Fifth Circuit. I have problems with it anyway. My basic problem is, are you arguing that regardless of what the law was in 1977 when Congress passed this, and it passed it strangely for the opposite, to keep people who were not covered by Social Security from making believe that they were covered, but it passed it with a very definite thing in mind, if at that time your clients would all have been individuals, because at that time every state said that those who were sufficiently in control were not limited partners, are you saying that then individual states can by changing their law make the federal tax law be different? Now here's my problem. I recently won the Phillips Prize for the American Philosophical Society. Turns out that's taxable, and it's taxable to me individually. Suppose the Philosophical Society were to say every winner of that prize is actually a limited partner to the Federal in the society. Do they have that capacity to change federal tax law on the basis of individual states? Does that make any sense? Judge Calabresi, I don't think what's going on here is that states are changing federal law. When Congress codified the exception in 1977, it did so against a backdrop of what limited partner meant under state law. So let's talk about that. At that time. Right. The ULPA, which you cite, which was adopted by most of the states, right, this is the 1916 Act, the Uniform Limited Partnership Act. Yeah, that 1916 and there's also a 1976. Right. So you cite your brief as limited partners are not bound by the obligations of the partnership, which is true, but then later in the ULPA, that's Section 1, Section 4 says the contributions of a limited partner may be cash or property, but not services. And Section 7 says a limited partner can become liable as a general partner, rephrasing, if he takes part in the control of the business. How does that not say that the partners in this case are not limited partners? So the fact that, in fact, under the ULPA, what is it, 49 out of 50 states would have, I'm assuming it's Louisiana that didn't, but 49 out of the 50 states would have said these folks were not limited partners under the ULPA. Judge Merriam, I think this goes to the question of what it means to be a limited partner. Yes, and what the ULPA says it means. And also, what is the consequence of potentially being exposed to liability even as a limited partner? If you are a limited partner, what that means under state law is not that you have unlimited liability no matter what. It means that you have unlimited liability in scenarios A, B, and C, if you comply with certain requirements, but not in scenarios D, E, and F. If you are in scenario D, that doesn't suddenly transform you from a limited partner to a general partner. You are still a limited partner. You simply are not qualifying in that moment for the protections of limited liability. We know this from the existence of dual status partners, which Congress recognized in the statute. If you have a dual status partner who is both a limited partner wearing one hat and a general partner wearing another, by definition, they have unlimited liability by virtue of the general partner hat. That doesn't mean they stop being a limited partner. It means they have two capacities. But all of the historical sources say, I would say 90 percent of the historical sources say a limited partner, as opposed to a member of a limited partnership, but a limited partner is one that does not take part in the management or control or day-to-day activities of the business. It is effectively a passive investor. That is a virtually unanimous view of all the historical sources cited in the briefing here. Respectfully, Judge Merriam, I disagree. I thought you might, but I have read them all. In fact, I think it's the polar opposite. I think that the overwhelming majority, if we look, for example, at Black's Law Dictionary from 1968, defining limited partners, they're special partners contributing in cash payments, a specific sum, and who are not liable for the debts of the partnership beyond the funds they contribute. My attorney created a chart of all these different sources, and I agree with Judge Merriam. But the vast majority require that a limited partner not participate in the management or control. I think what you might find is that some sources, but not all, I would point you, for example, to the Frigidaire case. I'm not suggesting all, but I am suggesting the vast majority. If I may invoke the Fifth Circuit, just as shorthand, because my time is running short. In law school, did you not learn that a limited partner did not participate in the management or control of the partnership? Again, I think this goes to the question of what is the consequence of participating in control. Did you learn that when you were in law school? Not in precisely that form. What I understood in law school and what I have understood in working on this case is that a limited partner, in order to receive the protections of limited liability, has to meet certain requirements. And there's case law about how much control you can exercise. It's one of those requirements that there isn't much control. So, without getting into your chart, I think the cases were not uniform about that. But I think two key Our question is, what did Congress mean in 1977 when it said that some people who are in fact limited partners can't make believe they are not in order to be covered by Social Security? Because that was the mischief that Congress tried to solve in 1977, while others who are instead independent enough are taxed, are covered by Social Security. Now, the fact that this is currently having the opposite effect, in a way, from what went on, doesn't matter. Wasn't that the issue that Congress was looking at? Of saying, who is it that we think can get covered Social Security benefits and who can't? And today, who is it who must contribute to Social Security and who can't? But one thing we know from the face of the statute that Congress passed, is that it recognized that limited partners could perform services for the partnership and remain limited partners. We know that from the guaranteed payments. But are you suggesting then that what individual states do will affect whether people are taxed or not in this, when the object of a federal government was simply a taxed one, not linked to that, so that you could have people in Missouri and in Connecticut be treated totally differently? They wouldn't be treated totally differently, but what does happen in tax law all the time is that there can be federal tax law consequences to things that are determined under states. And every one of those is where that has a direct consequence to whether they are earning money or not. In this case, it would be each state just being able to do it on its own for its own ends. I don't think that's right, respectfully, Judge Calabresi. I think the common thread that was uniform in 1977 was that a limited partner was a member of a limited partnership with limited liability. That was the common thread. We look to state law to determine if somebody satisfies that definition. This is not different than there being tax consequences to marriage, for example, where we look to states to determine whether a marriage is valid or not. And New York and Kentucky might have different rules about that. There's no impermissible disuniformity about that. That's not letting state law control federal law. That's just federal law looking to rights and obligations that are created by state law. That's all that's going on here. All right. Thank you, counsel. We'll hear from you again on rebuttal. We'll hear now from Ms. Bringer. Good morning. May it please the Court, my name is Nora Bringer, and I represent the Commissioner of Internal Revenue in this appeal. Soroban's principals are trying to avoid self-employment taxes on $140 million by claiming to be limited partners. But when Congress enacted the limited partner exception in 1877, limited partners could not control a business like Soroban's principals did. And if they did, they'd lose their limited liability. The undisputed facts here show that the principals were so essential to Soroban that it would not have existed without them. They ran the business. They directed the investment funds that generated its income. And they were in charge of its day-to-day operations. The tax court correctly held that Soroban's principals were not limited partners under the limited partner exception, and that their $140 million was net earnings from self-employment subject to self-employment taxes. I'd like to say... Counsel, I have two questions for you. First is, what do we make of a 1997 Congressional Act which, when in a different context, would have clarified the issue, Congress steps in and says, no, no? That's my first question. My second question is, if we buy what you suggest, aren't we creating a situation which is incredibly difficult for individual taxpayers? Because the question of what is sufficient control or not varies greatly. And so the tax liability of individuals would become an immensely complicated one. Now, if we had regulations from the IRS which clarified that, that might do it. But at the moment, wouldn't we, if we buy your position, create a situation which really makes administration and fairness to individuals extremely difficult? Thank you, Your Honor. I'll start with the 97 proposed regs in the Congressional moratorium, your first question. So the regulations the Treasury proposed in 1997 had several bright-line rules, or bright lines beyond which folks would not be limited partners. They were very specific things. They were treated as a limited partner unless they had personal liability, they had authority to contract with a partnership, or they participated for more than 500 hours during the taxable year. Now, that's a very different approach to the taxpayer's approach here, which was to look holistically at all facts and circumstances surrounding the partnership to determine, you know, whether these folks were functioning as limited partners as that idea was understood in 1877. So the first thing I would say is that the proposed regulations are quite different from what the tax court did here, and really don't bear a lot of, have a lot of weight on whether or not the tax court did the correct thing here. The other thing I would say about the 97 proposed regs is, and the Congressional moratorium in particular, is that that all occurred 20 years after Congress passed the limited partner exception, and doesn't really enlighten us as to what Congress was thinking in 1977. Moving on to the, what I think of as the predictability or fairness kind of problem that you raised in your second question, this case is not a close call. Soroban's principles were way over the line of what a limited partner could conceivably have done as a limited partner in 1977. I understand that you're saying that in this case it's obvious, and yet if we were to rule that way, we can't say, yes, but there are obvious cases and non-obvious cases. We would rule that this, that the question was whether people had sufficient control, and that question would then become a mess for later courts and for the IRS. So that, you know, it's one thing to say, okay, this case is easy, but that doesn't mean that solving an easy case doesn't cause all sorts of problems for the ordinary case. Sure, Your Honor. No, I appreciate that. And we acknowledged in our brief that in some cases this would be, you know, a more difficult question than it is here. I would point to some other Supreme Court cases about partnerships and partner participation from the 1940s, Tower and Culbertson. Now, those cases were about whether a partnership was bona fide or whether a partner had bona fide participation in the partnership. And those cases established, very similar to what's here, an all-facts-and-circumstances test that was very comprehensive, looked at the entire business, how they earned their income, who was responsible for earning the income, the very same kinds of things that the tax court did here. And in the Culbertson case in 1949, the Supreme Court emphasized that it was an all-facts-and-circumstances test and then said there is nothing new or particularly difficult about such a test. Maybe that's easy to say for a court that doesn't have to hold a trial and sort of sort through all of these facts in the first instance. But this has been — Well, there may be another answer, and that is, were we to rule for you, there would be a circuit split, and presumably the case would go to the Supreme Court, which would then decide. In the interim, the IRS could perfectly well issue regulations which would clarify the matter and make it even safe harbor regulations so that the issue could be resolved while this issue was being decided. I think just from a humane point of view, if the IRS did its job of issuing regulations in a situation where we have these cases going in, assuming that we went in a different direction, would solve the problem, I think. Well, Your Honor, yes. It may very well be the case that this issue might go to the Supreme Court. It's also pending in the First Circuit where we're waiting for an opinion in the Denham case, and so — Is it percolating anywhere else? I noted that it looks like the Fifth Circuit case, there's been a petition for rehearing and an order for a response to the petition, and the mandate's been held, right? So we don't know where the Fifth Circuit will end up. In the First Circuit, we don't know where even the panel will end up. Do we know if it's cropping up anywhere else in the country? Your Honor, these are the only three live litigation cases that I'm aware of at this point. There certainly are a number of other entities with this kind of issue that are percolating through the administrative exam process and audits and that sort of thing. But they're a ways off? As I understand it, yes. Okay. Thank you. I'd just point out one more thing in response to Judge Calabresi's questions about fairness and how do we apply this rule, that there are many examples in tax law for these kinds of multi-factor facts and circumstances tests. And many times it's clear. You know, one example is the debt versus equity distinction. I have a mortgage on my house. That's very clearly a debt. There's no question about it. But when you have someone who puts money into a business, there's paperwork that calls it a loan, but then they don't treat it like a loan, there can be a very complicated analysis to determine that it's actually equity and not debt. So, you know, these kinds of line drawing problems do exist. I think in a lot of cases it will not be a complicated analysis. But when folks start to push the boundaries of, you know, where the line is, then it does start to get more complicated. I would like to just speak for a moment about the tax court's test in the context of the pre-1977 cases. So every case of the party's site goes through the kinds of analysis the tax court did here. Granger, Sobola, Holzman v. D. Escamilla, you know, all of these cases. The courts really dug into the facts of the entire business. Who was in charge of what? How did they relate to each other? Importantly, to Judge Chin's question about, you know, isn't this, what we were talking about, is this a partnership issue? And the analysis that's needed here is really an interrelational analysis among the folks who are involved in the business. And you can see that in every one of these cases that we talk about. That's exactly how the courts did the analysis. Are there any further questions? All right. Thank you, counsel. Thank you very much. And we'll hear again from appellants. You have reserved three minutes. Thank you, Your Honor. Let me start with Judge Calabresi's question about administrability. It would be nice if the IRS's humanity solved this problem for us. You'll forgive me if I'm not putting a lot of faith in that. Sure, there are areas of the law where you can have facts and circumstances type tests, but the IRS here has provided no guideposts whatsoever. And it's a particularly acute problem because if you compare this case to one like Calabresi, which my opposing counsel pointed out, that was a case where you looked at the outset, where the court could look at the outset, at whether two partners intended to be partners. And the facts and circumstances go into that, but it's a one-time test. Here, whether somebody exercises too much control or doesn't exercise too much control in the IRS's view, it's partner by partner. It's certainly not something that can be determined at the partnership level. And it can change over time, depending on what role partners are playing in the partnership at any given time. There simply is no way to have an administrable test like this. And it's not the test that Congress envisioned in the statute. We know that from the 1997 rejection of the IRS's attempt to move in this direction. We know that from the guaranteed payments clause in the statute, which makes clear that Congress didn't think limited partners were limited to being just passive investors. We know that from other provisions of the statute, like the retired partners carve-out, like Section 469, where Congress did expressly incorporate a passive investor requirement. We know that from the existence of dual status partners, which, again, is the recognition that just because you are a limited partner also acts as a... Does the record indicate how they apportioned the guaranteed amount, which was, what, $2 million or something, from the other amounts? I don't know the answer to that question, judging from what the record says. I mean, the suggestion is they acknowledge some work, and that's true, with the IRS, and they did a lot of work. I mean, as counsel for the other side argues, it's not a close case if you do consider the issue of control and involvement. It may not be a close test, close case under the IRS's amorphous control test. It is also not a close case in the other direction that under Delaware law, these partners were entitled to limited liability because they didn't have formal control. And again, the test that Congress codified here is it was legislating against a background understanding of limited partner, which just means one who can have limited liability subject to the rules and restrictions that a state puts in place. If I might just end by reminding the Court on jurisdiction, these are not partnership-level items. There is nothing... Net earnings from self-employment is not something that is required by Subtitle A to be taken into account for the partnership's taxable year. It also doesn't appear on the Treasury regulation, which this Court has held is dispositive in whether something is a partnership item for TEFR or not. So that's really as far as the Court needs to go here without the need to create a circuit split. All right. Great. Thank you both. Thank you. The matter will be taken under advisement.